**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2867-24

TRE 8 HOLDINGS, LLC,

    Plaintiff-Appellant,

v.

OLIVE TREE WHOLESALE, INC.,
and MOHAMMED A. ZAHRIYEH,

    Defendants,

and

STEVEN WEDEL, and ACTION
DISTRIBUTORS, INC.,

    Defendants-Respondents.

_____

        Submitted May 13, 2026 – Decided August 3, 2026

        Before Judges Gummer and Paganelli.

        On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0736-22.

        Rubin Kaplan & Associates PC, attorneys for appellant (Evelyn A. Donegan, of counsel and on the briefs).

Schafkopf Law, LLC, attorneys for respondents (Gary Schafkopf, on the brief).

PER CURIAM

In this commercial-lease dispute, plaintiff TRE 8 Holdings, LLC appeals an order entering judgment in favor of defendants Steven Wedel and Action Distributors, Inc. (Action)[1] following a bench trial. In particular, plaintiff challenges the trial court's determination plaintiff had not proven damages. Perceiving no legal error and because the court's findings were supported by the evidence in the record, we affirm.

I.

In September 2016, plaintiff purchased property in Edison (the Property) that contained office and warehouse space and parking areas for cars and tractor trailers. Olive Tree Wholesale, Inc. (Olive Tree) was already a tenant. Plaintiff, as lessor, and Olive Tree, as lessee, entered into a new December 2016 lease agreement. The relevant provisions of the lease are as follows:

> 7.2 SURRENDER:
> On the last day of the term hereof, or on any sooner termination, [Olive Tree] shall surrender the [p]remises to [plaintiff] in the same condition as when received, broom clean, ordinary wear and tear excepted. In addition, [Olive Tree] shall repair any damage to the

---

[1] We refer to Action and Wedel collectively as "defendants" because they are the only defendants who appeared at trial and participated in this appeal.

[p]remises occasioned by the removal of [Olive Tree]'s trade fixtures, furnishings and equipment pursuant to Article 7.5(D), which repair shall include the patching and filling of holes and repair of structural damage.

7.3 LESSOR'S RIGHTS:

If [Olive Tree] fails to perform [its] obligations under this Article 7, [plaintiff] may at its option (but shall not be required to) enter upon the [p]remises after ten (10) days prior written notice to [Olive Tree] and put the same in good order, condition and repair; and the cost thereof, together with [] interest thereon at the rate of four percent (4%) above the prime rate of interest then in effect at JP Morgan Chase Bank shall become due and payable as [a]dditional [r]ent to [plaintiff], together with [Olive Tree]'s next rental installment.

. . . .

10 TAXES AND BUILDING OPERATING COSTS:

10.1. [Olive Tree] shall pay [a]dditional [r]ent for [t]axes and [b]uilding [o]perating [c]osts as hereinafter provided.

. . . .

12.1 SUBLETTING/ASSIGNMENT:

[Olive Tree] may not assign nor sublet all or any portion of the [p]remises, without the prior written consent of [plaintiff]. . . . Notwithstanding such subletting or assignment, [Olive Tree] . . . shall remain directly and primarily liable for performance of the terms and conditions of this [l]ease, and [plaintiff] shall have the right to require and demand that [Olive Tree] pay and perform the terms of this [l]ease. Any surplus monies made above the [l]ease rents on a sublease basis shall be paid to [plaintiff] as [a]dditional [r]ent. . . .

3

Luke Liang, plaintiff's manager and sole employee, executed the lease on behalf of plaintiff. Liang was also the CEO of Vision Industries Group, Inc. (Vision), a separate distribution company. Liang sometimes utilized Vision employees in certain aspects of plaintiff's operations. Mohammed A. Zahriyeh executed the lease on behalf of Olive Tree, indicating he was its president. Liang understood Zahriyeh handled Olive Tree's building-related issues, such as repairs, while Wedel handled its financial matters. Wedel, in fact, was a vice-president and shareholder of Action.

In or around 2019 or 2020, Liang discovered discrepancies in amounts Olive Tree purportedly owed to plaintiff under the lease, specifically late common area maintenance (CAM) payments and unpaid tax obligations. Plaintiff sent invoices to Wedel seeking payment from Olive Tree for amounts dating back to 2016. The invoices prompted an exchange of emails in 2021 between Liang, plaintiff's counsel, Wedel, and Olive Tree's counsel.

On January 17, 2022, Liang sent an email to Wedel, stating he had been informed that "the whole parking lot . . . [wa]s totally empty, including all th[e] trailers" and that the January rent had not been paid. He asked if Wedel was "closing [his] business since [he] . . . still ha[d] a full warehouse of stuff inside." Wedel did not respond to that email. Soon thereafter, Wedel sent a package

4

addressed to Vision containing keys and a note stating, "Olive Tree . . . is out of business."  Liang then "realized they just took off, vanished."

On January 20, 2022, Liang sent an email to Wedel confirming receipt of the keys and note, stating he had been unable to reach Wedel, and describing the warehouse as being "loaded with various items of trash, debris and pallets, boxes, and miscellaneous personal property," which appeared to be "worthless" and "abandoned."  Liang warned if he did not receive a response from Wedel "immediately," he would "empty the warehouse and dispose of" the personal property.

After receiving no response to that email, Liang directed Vision's warehouse manager to visit the Property and "clean up the warehouse for the mess that was left over."  The manager assembled a team to assist with the cleanup.  The cleanup process occurred daily over approximately three months.  According to Liang, plaintiff's costs associated with the cleanup included dumpster charges totaling $62,068, Home Depot purchases of $1,095.70, and direct deposits to Vision employees and "people from [] temp agencies" who had assisted with the cleanup.

During the cleanup, an employee presented Liang with a piece of mail addressed to Action at the Property.  According to Liang, that is when he learned

5

Action had been conducting business at the Property. Olive Tree had not sought consent for a subtenant and never disclosed it had one.

According to Wedel, Olive Tree and Action had an oral agreement to share the space Olive Tree leased from plaintiff and to equally split the cost of the rent, with Action making rent payments to plaintiff and Olive Tree reimbursing Action its half. Under that oral agreement, Action primarily used the back half of the warehouse while Olive Tree used the front half. According to Wedel, Olive Tree vacated the Property sometime in August or September of 2021, leaving behind its personal property, and Action remained until the end of 2021. Wedel asserted Action had spent two months filling up dumpsters with Action's products in an effort to clean up before it vacated the Property.

Plaintiff commenced this lawsuit in 2022. In an amended complaint, plaintiff named Olive Tree, Wedel, Action, and Zahriyeh as defendants. Plaintiff pleaded a count against all defendants for breach of contract, seeking $879,370.24 in rent from January 2022 through November 2023; $197,989.85 in unpaid CAM charges, property taxes, and insurance premiums as of February 1, 2022; and "ongoing CAM, taxes and insurance[ and] the amount necessary to put the premises in good order in an amount to be determined," (count one); counts for piercing Olive Tree's corporate veil as to Zahriyeh (count two) and

6

Wedel (count three); a count against Action, alleging it had operated a business at the Property, had "received the benefits of the [p]remises," and had "failed . . . to pay the amounts due," thereby causing plaintiff damages (count four); and a count against all defendants for legal fees and costs based on a provision in the lease, (count five).

Prior to trial, the court entered default judgment against Zahriyeh and Olive Tree. The court conducted a four-day bench trial as to the remaining defendants. Plaintiff presented the testimony of four witnesses: Liang, plaintiff's counsel, Vision's warehouse manager, and another Vision employee. Wedel testified on his and Action's behalf.

At the close of plaintiff's case, defendants moved for a directed verdict. The court granted the motion in part, dismissing counts one and five as to Action and count three as to Wedel. The court reserved as to count four, explaining Rule "4:9-2 and the testimony would support looking at [count four] as a trespass[-]type cause of action looking for damages." At the close of defendants' case, the court denied defendants' renewed motion for a directed verdict on the remaining counts and again reserved on count four.

On April 10, 2025, the court issued an oral decision as to the remaining claims and entered an order granting judgment in defendants' favor. The court

7

began its decision by addressing the witnesses' credibility. The court found them "mostly credible," with "one exception" being that "much of the testimony adduced by plaintiff was based upon assumptions and inferences rather than [its witnesses] testifying on concrete fact."

The court dismissed counts one and five as to Wedel. The court found sufficient evidence to establish Action's liability under count four. Based on the evidence, the court determined Action had "received the benefits" of "operat[ing] a business at plaintiff's premises" and had done so without telling plaintiff about its subtenancy even though it knew the lease required plaintiff's consent to a subtenancy. The court concluded Action had "fail[ed] to properly and legally become a valid subtenant," continued operations after Olive Tree vacated the Property, and "clearly benefitted from ongoing use of the [P]roperty."

The court then turned to the issue of damages, stressing that a finding of liability "d[id] not end the inquiry" and that plaintiff was required to prove both that it had "suffered damages" and that Action "was responsible for or proximately caused those damages." The court found plaintiff had failed to prove it paid for the cleanup costs, determining the cleanup invoices were addressed to Vision and that there was "no evidence to suggest that [plaintiff]

A-2867-24

reimbursed or otherwise accounted for these invoices." It concluded "Vision suffered the damages . . . not" plaintiff and that "those damages cannot be passed on to . . . Action."

The court also found the evidence deficient as to who actually paid certain expenses. With respect to the Home Depot receipts, the court found the record was "devoid . . . of any evidence as to who paid these amounts. . . . Was it Vision? Was it [plaintiff]? Was it Mr. Liang? Was it a personal credit card?" The court acknowledged the dumpster invoices were addressed to plaintiff but ultimately found "no real indication that the damages were actually born[e] by" plaintiff.

The court further found "there[ was] nothing . . . connect[ing] th[e dumpster] costs to Action." It determined the evidence did not establish who had owned the abandoned personal property or what portion of the cost of its removal was attributable to Action:

> There was no testimony and there's no way for this [c]ourt to determine, even from looking at photographs, to break down the amount of each product or the time, labor or space needed to dispose of each type of product, how much of what was in that space belonged to Action, how much of it belonged to Olive Tree. Did the stuff that belonged to Action take one day or [twelve] days? Did it take one dumpster or [fifty] dumpsters? All of that would be wild speculation by the [c]ourt.

9

The court found that "even . . . accept[ing] that the space was shared by Action and Olive Tree 50/50, it doesn't mean that at the time . . . the [P]roperty was abandoned that the product [left behind] was 50/50." Concluding plaintiff had not established it was damaged by Action, the court found in Action's favor on count four.

This appeal followed. Plaintiff challenges the court's damages determination and its subsequent dismissal of count four, contending the court's finding plaintiff had not proven damages was against the weight of the evidence and legally incorrect given that the court found liability under count four. We disagree and affirm.

II.

The standard of review in an appeal following a bench trial is well-established. Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017). We "review a 'trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)); see also Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (finding appellate courts "give deference to the trial court that heard the

10

witnesses, sifted the competing evidence, and made reasoned conclusions"). We do "not disturb the factual findings . . . of the trial judge unless convinced that those findings and conclusions were so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Whiteman v. Twp. Council of Berkeley Twp., 261 N.J. 106, 122 (2025) (quoting Allstate Ins. Co., 228 N.J. at 619). "[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Applying that standard, we discern no basis to disturb the trial court's conclusion plaintiff failed to prove it was damaged by Action and Wedel. In a trespass case, "[d]amages need not be proved with precision where that is impractical or impossible." Borough of Fort Lee v. Banque Nat'l de Paris, 311 N.J. Super. 280, 291 (App. Div. 1998). "So long as the record supports a reasonable estimate of damages, based upon more than mere speculation, a damage award can be affirmed." Ibid. (emphasis added); see also Am. Sanitary Sales Co. v. State, Dep't of Treasury, Div. of Purchase & Prop., 178 N.J. Super. 429, 435 (App. Div. 1981) (finding "[e]vidence affording a basis for estimating

11

damages <u>with some reasonable degree of certainty</u> is sufficient to support an award of compensatory damages" (emphasis added) (quoting <u>Paolicelli v. Wojciechowski</u>, 132 N.J. Super. 274, 278-79 (App. Div. 1975))).

Plaintiff did not meet that standard. Plaintiff may have proved personal property was abandoned and had to be removed. However, it did not prove that it, and not Vision, incurred and paid for the cleanup costs or that Action had abandoned the personal property necessitating the cleanup efforts. As the court found, the direct-deposit slips and invoices for "temp agencies" were addressed to Vision, and plaintiff presented no testimony or documentation showing plaintiff had paid the invoices or otherwise reimbursed Vision. As to the Home Depot invoices, plaintiff did not establish who had incurred and paid those costs. And although the dumpster invoices were addressed to plaintiff, as the court concluded, there was "no real indication" plaintiff had paid them.

Plaintiff also did not demonstrate the abandoned personal property belonged to Action and not Olive Tree. The evidence did not distinguish ownership of the goods left behind and, as the court noted, there was "no way" to determine how much time, labor, or dumpster usage was attributable to Action, making any estimate of damages "wild speculation." The record did not permit the court to reasonably allocate the cleanup costs between Action and

12

Olive Tree. Nor did plaintiff establish Action had an obligation to remove Olive Tree's abandoned personal property.

Plaintiff asks why Action should not "be held responsible for the unpaid CAM and taxes during the period of [its] use of the [P]roperty." The answer to that question is: because Action never agreed with plaintiff that it would pay those charges. As the court correctly found, the contract that required payment of CAM and taxes was between plaintiff and Olive Tree, not plaintiff and Action. Plaintiff cannot impose a contractual obligation on a party that didn't agree to it. See Goldfarb v. Solimine, 245 N.J. 326, 338-39 (2021) (finding that a party seeking damages for breach of contract must prove "the parties entered into a contract containing certain terms" (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (internal quotation marks omitted))). For the same reason, plaintiff did not prove it was entitled to rent payments from Action.

Here, plaintiff makes arguments it did not present to the trial court based on N.J.S.A. 2A:42-4 and Action's purported status as a "tenant at sufferance." We decline to address those newly-raised arguments. See Pfannenstein v. Surrey, 475 N.J. Super. 83, 99 (App. Div. 2023) (finding "[w]e will not consider an issue that is raised for the first time on appeal unless the issue pertains to the trial court's jurisdiction or concerns a matter of great public interest.").

A-2867-24

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2867-24